A. T. WHITTLE, Appellee, v. SIMON KLIPPER, Appellant.

**BROKERS:** Compensation—Procuring Cause—Broker Working
1 Through Hostile Agents. A broker may not establish that he
was the *procuring cause* of a conveyance of his principal's
property, by showing that he worked through and adopted the
efforts of other agents who were hostile in interest to his prin-
cipal.

**BROKERS:** Compensation—Bad Faith—Renunciation of Agency.
2 A broker who, subsequent to the initiation of negotiations be-
tween his principal and the ultimate purchaser, and prior to
the closing of the deal, secretly negotiates a commission from
said purchaser, thereby forfeits all right to a commission from
his principal.

*Appeal from Black Hawk District Court.*—GEORGE W. DUN-
HAM, Judge.

DECEMBER 18, 1917.

SUIT to recover a commission for the sale of real es-
tate. There was a verdict for the plaintiff, and the defend-
ant appeals.—*Reversed and dismissed.*

*Mears & Lovejoy,* for appellant.

*W. N. Birdsall,* for appellee.

EVANS, J.—The petition declares upon
1. BROKERS:    an express contract of employment by the
compensa-
tion: procur-   defendant of the plaintiff as a real estate
ing cause:
broker work-   agent to dispose of defendant's residence
ing through
hostile agents. property in Waterloo, at an agreed commis-
sion of $100. The answer was a general denial. The de-
cisive question in the case is whether, upon any proper
view of the evidence, the plaintiff can be said to have been
the procuring cause in disposing of the defendant's prop-
erty. The agency of the plaintiff was not exclusive, nor
was it coupled with any interest. Notwithstanding such

agency, the defendant had the undoubted right to dispose of his own property to a purchaser of his own finding, and to do so without liability to the plaintiff for a commission. The defendant did dispose of his property by an even exchange of the same with one Austenson for a Minnesota farm. It is undisputed that the plaintiff had nothing personally to do with finding Austenson as a customer, or with bringing him to the defendant. So far as was apparent to the defendant, he found Austenson and his farm without any aid from the plaintiff. In order to find the plaintiff to have been the procuring cause, such finding must be based, not upon what he did personally, but upon certain underground relations existing between him and other real estate agents who were instrumental in the exchange, such relations being wholly unknown to the defendant.

The story, in brief, is that Whittle communicated the fact of his agency to McLoud, of Waterloo. McLoud was an employee of the Gibson Company, a real estate firm of said city. This firm had certain Minnesota farms listed for sale. In pursuance of a message received by plaintiff from McLoud from Minnesota, the plaintiff one day advised the defendant to go to Lyle, Minnesota, to see a certain farm located in Mitchell County, Iowa, near the state line, which would be shown to him by McLoud. He advised him that McLoud would meet him at the depot and take him to the farm, and perhaps to one or two others. The defendant went, accompanied by his wife. McLoud did not meet him at the depot, nor at any other place during the day. Thereupon, the defendant, on his own initiative, went to the office of the real estate firm of Martin & Johnson, at Lyle. He made inquiry at such office about the Mitchell County farm, and was informed by Mr. Johnson that he knew the farm and would take him to see it, which he accordingly did. Such farm proved wholly unsatisfactory to the defendant. Thereafter, Johnson took him to the Austenson

farm, which proved to be satisfactory to him, and negotiations between him and Austenson were at once begun. On the following morning, he went again to the Austenson place for some further inspection. Thereupon, Austenson and Martin returned with the defendant to Waterloo, for the purpose of inspecting the property of the defendant.

On the first evening at Lyle, McLoud came into the office of Martin & Johnson while Austenson and the defendant were there in pursuit of their negotiations. McLoud encouraged the trade, and accompanied the party, the following morning, to the Austenson place. When Martin and Austenson and the defendant arrived at Waterloo, the plaintiff, Whittle, was at the depot with his automobile, and took the party to the house of the defendant. This was his first connection with the transaction in a personal sense. It is not claimed that he was at the depot at the request of the defendant. It appears without dispute that there was a certain community of interest between all the real estate agents involved in the transaction. Martin & Johnson, the Minnesota agents, had an arrangement with the Gibson Company whereby they furnished to the Gibson Company lists of Minnesota lands upon a basis of a divided commission. McLoud was an employee of the Gibson Company. Martin & Johnson were agents for the Austenson land, although the same had not been listed with the Gibson Company. The arrangement between the agents was that the commission from Austenson should be divided, one third to Martin & Johnson, one third to the Gibson Company, and one third to Whittle. The plaintiff testified, however, that his alleged commission from the defendant was to be charged against his share. Austenson paid a commission of $900, of which Martin & Johnson kept $300 and sent the balance to the Gibson Company, to be divided between that company and Whittle. The trial court instructed the jury as follows:

"On this branch of the case you are further instructed that it is not necessary that plaintiff should personally take the purchaser to the defendant, or that he should personally have any part in the final closing of the deal, but the plaintiff must have been what the law designates a procuring cause, which is to say that if, through plaintiff's efforts and because of his efforts, a disposition of the house was made, he would be considered the procuring cause, even though he did not personally bring the purchaser to the defendant, and even though he may have had no part in arranging the details of the deal. And if you find from the testimony that plaintiff did, through his efforts to dispose of the house, present the matter to other land agents and solicit their efforts to that end, and that through their efforts had through and because of his solicitation a purchaser was found, plaintiff would be the procuring cause. If, however, the defendant, through other channels and independent of the plaintiff, procured such purchaser, the plaintiff would not be the procuring cause, and in that event it should fail in this action."

The thought of the instruction, as given by the court, is that the plaintiff, in making disposition of the defendant's property, could make use of other agencies of assistance. If this were all, there could be no objection to the instruction. The difficulty is with its application to the undisputed facts in the case. The plaintiff, while acting as agent for the defendant, could not become hostile in interest to the defendant. Neither could he assume to employ other agencies that were hostile in interest. If McLoud had met his appointment at Lyle with the defendant, and if the defendant had dealt with him on the supposition that he was assisting Whittle for the defendant's benefit, and had thereby purchased the Mitchell County farm, for which McLoud was in fact an agent for his employer, this would have been a fraud upon the defendant which would have defeated a

claim for a commission. The same thing would have been true if McLoud had sold to the defendant the Austenson farm. No fraud was in fact perpetrated upon the defendant at this point, so far as appears from this record. Martin & Johnson did not assume to represent him, either by way of assisting Whittle or otherwise. They acted openly as agents for Austenson. Manifestly, therefore, the plaintiff is in no position to say that the acts of Martin & Johnson, the agents of Austenson, inured to his benefit as alleged agent of the defendant. Nor is he in any better position to say that any act on the part of McLoud inured to his benefit as agent of the defendant. Even if McLoud and his employer were not adversely interested to the defendant in the deal, yet, as already indicated, the defendant had already found his purchaser and had begun his negotiations before McLoud knew anything about the deal. If the defendant had a legal right, notwithstanding his contract of agency with the plaintiff, to sell his own property, it follows that he himself, and not the plaintiff, and not McLoud, was the procuring cause of the finding of this purchaser. Moreover, the plaintiff testified that McLoud was not his agent, but was the agent of the Gibson Company. To put it briefly, the plaintiff sent the defendant to Minnesota to meet McLoud. He took him to the train. While in Minnesota, the defendant found Austenson. If it can be said, therefore, that the plaintiff was the procuring cause of the finding of Austenson, it was because he took the defendant to the train at Waterloo. In avoidance of the fact that the plaintiff received a commission from Austenson, he testified as follows:

2. BROKERS: compensation: bad faith: renunciation of agency.

"I told him I might find him a trade for southern Minnesota land, to which he agreed; but I told him I couldn't make many trips to Minnesota on $100 commis-

sion, but would try and get some commission out of the land, should we make a deal."

The foregoing was a part of the original contract of employment, according to the plaintiff's testimony. Taking this as true, it implied that the plaintiff had then no existing agreement for a commission from the other party. It implied, also, that whatever of the kind should be done in the future should be done openly, and with the knowledge and approval of the defendant. When the defendant found Austenson, the plaintiff had no agreement with Austenson for a commission. He had never known Austenson. His arrangement for a commission was made later. It was made some time subsequent to the beginning of negotiations between Austenson and the defendant. It was done without any disclosure to the defendant. Such arrangement on the part of the plaintiff should be regarded either as an intended abandonment of his agency for the defendant, or as a breach of the good faith due to his principal. The most charitable view for the plaintiff is the former. From any point of view, it was an interference with the defendant's negotiations which was not consistent with good ethics. What is here said applies also to plaintiff's agreement with the other agents to pool the commissions, as testified to by the plaintiff himself.

We think it clear, therefore, that the plaintiff wholly failed to show himself to have been the procuring cause of the finding of the purchaser, Austenson, and that it is not available to him to adopt for himself the acts of other agents, hostile in interest to the defendant. The defendant requested an instruction on this subject which would have necessitated a verdict for him. The judgment below must, therefore, be reversed.

*Reversed,* and plaintiff's action is hereby *Dismissed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.